NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ANGELINA D.,
*Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, D.B.,
*Appellees*.

No. 1 CA-JV 17-0516
FILED 4-19-2018

Appeal from the Superior Court in Maricopa County
No. JD528342, JS518417
The Honorable Robert H. Oberbillig, Judge, *Retired*

**AFFIRMED**

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Christopher Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Ashlee N. Hoffmann
*Counsel for Appellee DCS*

---

**MEMORANDUM DECISION**

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Kent E. Cattani and Judge Jennifer M. Perkins joined.

---

J O H N S E N, Judge:

¶1            Angelina D. ("Mother") appeals from the superior court's order terminating her parental rights to her son D.B.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2            Mother gave birth to D.B. at home in November 2015 with the aid of a friend who had no medical training.  Afterward, she neither took the infant to a doctor nor obtained a birth certificate for him.  As Mother already was the subject of a dependency proceeding concerning two other children, the Department of Child Safety ("DCS") removed D.B. from Mother's care in December. Soon thereafter, the superior court severed Mother's rights to the two other children.[1]

¶3            In January 2016, Mother was arrested and charged with heroin possession.  She pled guilty and was sentenced to 2.5 years in prison.  While incarcerated, Mother participated in several services available to inmates, including Narcotics Anonymous, Heroin Anonymous, counseling, parenting and relationship programs, and a humanities program offered by Arizona State University.  Even though DCS sent letters to Mother, Mother's contact with DCS was sporadic, amounting to three letters over more than 17 months' incarceration.  While she was incarcerated, the superior court changed the case plan for D.B. from reunification to severance and adoption.  DCS then petitioned to terminate Mother's parental rights, alleging substance abuse, six months' time in care and a prior severance within the past two years for the same cause.

¶4            Mother was released from prison about a week before the severance hearing, which was held in October 2017.  She testified at the hearing, as did her DCS case manager.  After hearing the evidence, the superior court issued an order terminating Mother's parental rights based

---

[1]        Mother and D.B. are the only two individuals at issue in this appeal.

upon substance abuse, six months' time in care, and prior termination within two years for the same cause, all under Arizona Revised Statutes ("A.R.S.") section 8-533(B) (2018).[2]

**¶5** Mother timely appealed, and we have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 8-235(A) (2018), 12-120.21(A)(1) (2018), and -2101(A)(1) (2018).

## DISCUSSION

**¶6** The right to custody of one's children is fundamental but not absolute. *Jeffrey P. v. Dep't of Child Safety*, 239 Ariz. 212, 213, ¶ 5 (App. 2016). The superior court may terminate a parent-child relationship upon clear and convincing evidence of at least one of the statutory grounds in § 8-533(B). *Id.* The court also must find that severance is in the child's best interests by a preponderance of the evidence. *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 286, ¶ 15 (App. 2016); *see also* A.R.S. § 8-533(B).

**¶7** We review a termination order for abuse of discretion and will affirm unless no reasonable evidence supports the court's findings. *Jade K. v. Loraine K.*, 240 Ariz. 414, 416, ¶ 6 (App. 2016). The superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Jennifer S.*, 240 Ariz. at 286-87, ¶ 16 (quoting *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009)). Accordingly, "the resolution of conflicts in the evidence is uniquely the province of the [superior] court, and we will not reweigh the evidence in our review." *Id.*

### A. History of Chronic Substance Abuse.

**¶8** One of the statutory grounds for termination is that "the parent is unable to discharge parental responsibilities because of . . . a history of chronic abuse of dangerous drugs, controlled substances or alcohol and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period." A.R.S. § 8-533(B)(3). In moving for severance on this ground, DCS also must show that it made "reasonable efforts to reunify the family or that such efforts would have been futile," *Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453, ¶ 12 (App. 2005), and that the parent's substance abuse "be proven not to be amenable to rehabilitative services," *id.*, n.3. "Chronic" substance abuse is that which is long lasting, but not necessarily continuous. *Raymond F. v.*

---

[2] Absent material revision after the relevant date, we cite the current version of a statute or rule.

*Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 377, ¶ 16 (App. 2010). Temporary abstinence from drugs does not generally outweigh a parent's "significant history of abuse" or "consistent inability to abstain during the case." *Jennifer S.*, 240 Ariz. at 287, ¶ 17. Because "'children should not be forced to wait for their parent to grow up,' . . . a child's interest in permanency must prevail over a parent's uncertain battle with drugs." *Id.* (quoting *Raymond F.*, 224 Ariz. at 378, ¶ 25).

**¶9** Ample evidence supports the court's finding that Mother is unable to discharge parental responsibilities because of her history of chronic drug abuse. Mother testified she became addicted to opioids in 2006 and used heroin every day from sometime in 2007 until her arrest in January 2016. Immediately preceding her incarceration, during the dependency involving her other children, she failed to follow up on four referrals to TERROS, missed several drug tests and tested positive for heroin 12 times. That she chose to deliver D.B. at home without medical assistance, failed to take him to a doctor after he was born, and did not obtain a birth certificate for him, all support the conclusion that drug abuse rendered her unable to discharge her parental responsibilities. *See Raymond F.*, 224 Ariz. at 378, ¶ 20 (parental responsibilities are "those duties or obligations which a parent has with regard to [her] child").

**¶10** The record also contains reasonable grounds for the superior court's finding that Mother's inability to discharge her parental responsibilities will continue for a prolonged indeterminate period. On this point, the superior court may consider "the length and frequency of Mother's substance abuse, the types of substances abused, behaviors associated with the substance abuse, prior efforts to maintain sobriety, and prior relapses." *Jennifer S.*, 240 Ariz. at 287, ¶ 20. Here, the record shows that Mother used heroin on a daily basis for nine years – lengthy and frequent use of an illegal narcotic. In fact, Mother testified that she would become physically ill if she did *not* use opiates on a daily basis. As noted above, and as Mother admitted, her behaviors when she was using heroin demonstrated a disregard for her child's medical needs and well-being. Finally, the record does not contain any evidence that Mother attempted to maintain sobriety until forced to do so in jail.

**¶11** Mother argues DCS failed to prove it made reasonable reunification efforts or that such efforts would be futile. She also argues that because she abstained from heroin during her incarceration and participated in a substance-abuse program and attended Narcotics Anonymous meetings while in prison, DCS did not prove that she was not amenable to treatment. But Mother's failure to comply with services during

the prior dependency was evidence that further services would prove futile. In *Raymond F.*, 224 Ariz. at 379, ¶ 29, we stressed the importance of proof that a parent be able "to rise above [her] addiction in a non-custodial and unstructured setting, similar to that in which a [parent] would be expected to raise [her] children." Here, reasonable evidence supports the superior court's finding that Mother's abstinence from drugs while in prison did not outweigh her demonstrated longstanding inability to "rise above" her addiction in an unstructured setting. We will not disturb that finding. *See Jennifer S.*, 240 Ariz. at 286-87, ¶ 16.[3]

## B.      Best Interests.

**¶12**          The superior court may find that severance is in a child's best interests "based on either a benefit to the child from severance or some harm to the child if severance is denied." *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 16 (2016). The court should consider whether an adoptive placement is immediately available, whether the existing placement is meeting the child's needs, and whether the child is adoptable. *Id.* (citing *Raymond F.*, 224 Ariz. at 379, ¶ 30). In weighing a parent's interest in custody and control of a child against the child's interests in a safe and stable home life, "[o]f foremost concern . . . is 'protecting a child's interest in stability and security.'" *Demetrius L.*, 239 Ariz. at 4, ¶ 15  (quoting *Kent K. v. Bobby M.*, 210 Ariz. 279, 286, ¶ 34 (2005)).

**¶13**          Mother argues that for the long term, it would be in D.B.'s best interests to maintain his relationship with her. But in finding to the contrary, the superior court explained:

> He deserves permanency. He's in a loving home. He's with siblings. He's with family placement. It couldn't be a better situation for him. He's thriving, his needs are being met, and we don't . . . have to wonder about a maybe with him.

> He has a very good situation now, which is outstanding, and it makes no sense at all – it would be detrimental to him to disrupt that, to see what happens over

---

[3]          Having found evidence sufficient to support severance based on a history of chronic substance abuse, we need not address any of the other statutory grounds on which the court ruled. *See Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 251, ¶ 27 (2000).

the course of requiring mother to participate in an approved substance abuse program, regular drug testing on the outside, and then see where she's at in terms of parenting the child and reintroducing the child to her.[4]

**¶14** Reasonable evidence supports these findings. Mother's case manager testified that not only is D.B. placed with relatives who are meeting his needs and willing to adopt him, in his current placement, the child is able to see his two siblings and his birth father. Furthermore, D.B. has not bonded with Mother because he has not seen her since DCS removed him from her care in December 2015, weeks after he was born. The superior court committed no error in finding that severance would be in D.B.'s best interests.

## CONCLUSION

**¶15** For the foregoing reasons, we affirm the superior court's termination of Mother's parental rights to D.B.



AMY M. WOOD • Clerk of the Court
FILED: AA

---

[4] The court's formal findings of fact erroneously state that D.B. was not in a family placement.